# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                     CR 12-3111 JB

LEONARD MIERA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Leonard Miera's Objections to the Presentence Report Disclosed on August 27, 2013, filed September 2, 2013 (Doc. 90)("Objections"). The Court held a sentencing hearing on September 6, 2013. The primary issue is whether a conviction for aggravated assault with a deadly weapon under New Mexico's Aggravated Assault statute, N.M. Stat. Ann. § 30-3-2(A), is categorically a crime of violence under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.2. The Court concludes that, although it would decide differently, it is bound by the United States Court of Appeals for the Tenth Circuit's decision in United States v. Silva, 608 F.3d 663 (10th Cir. 2010), which found that New Mexico's aggravated assault with a deadly weapon is categorically a violent felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e)("ACCA"). The Tenth Circuit interpreted language from the ACCA that is nearly identical to U.S.S.G. § 4B1.2, defining a crime of violence, and cases interpreting the ACCA are persuasive in interpreting U.S.S.G. § 4B1.2. The Court is thus bound by the Tenth Circuit's determination that New Mexico's aggravated assault with a deadly weapon statute constitutes a violent felony, and will therefore overrule Defendant Leonard Miera's objection to the Presentence Investigative Report, ¶ 25, at 5,

disclosed on August 27, 2013 ("PSR"), and will find that L. Miera's conviction for aggravated assault with a deadly weapon under New Mexico's Aggravated Assault statute is a crime of violence under U.S.S.G. § 4B1.2.

## FACTUAL BACKGROUND

On April 10, 2012, L. Miera agreed to distribute three kilograms of cocaine to a confidential informant ("CI"). See PSR ¶ 13, at 4. On November 2, 2012, the CI contacted L. Miera in a detective's presence and negotiated the sale of a kilogram of cocaine. See PSR ¶ 13, at 4. On November 7, L. Miera's brother, Estevan, completed the sale and was immediately arrested. See PSR ¶ 13, at 4. Shortly thereafter, L. Miera was arrested at the purported "stash house," and a total of 6.51 kilograms was seized. Id. ¶ 13, at 4. After L. Miera was charged, further investigation revealed that L. Miera had prior convictions for Aggravated Assault with a Deadly Weapon and for Trafficking by Distribution of Cocaine. See PSR ¶ 14, at 4.

## PROCEDURAL BACKGROUND

On August 23, 2013, L. Miera pled guilty to a one-count information charging distribution of a quantity of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). See PSR ¶ 5, at 3. In the PSR, the United States Probation Office ("USPO") recommends a chapter four enhancement under U.S.S.G. § 4B1.1, the career offender provision. See PSR ¶ 25, at 5. The PSR states:

> The defendant was at least 18 years old at the time of the instant offense of conviction; the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense; therefore, the defendant is a career offender. The offense level for a career offender is 32. U.S.S.G. § 4B1.1.

PSR ¶ 25, at 5. The USPO in the PSR contends that L. Miera's conviction for aggravated assault

- 2 -

with a deadly weapon in 2001 and the drug trafficking offense in 2002 are either crimes of violence or controlled substance offenses, subjecting L. Miera to the career offender enhanced sentencing provisions of U.S.S.G. § 4B1.1.  See PSR ¶¶ 25, 33, 35, at 5, 7, 8.

L. Miera contends that his New Mexico conviction for aggravated assault with a deadly weapon is not a crime of violence under U.S.S.G. § 4B1.2 and, thus, that he should not receive the career offender sentence enhancement.  See Defendant's Objection at 2.  L. Miera argues that New Mexico's aggravated assault statute cannot categorically be a crime of violence under any of the three potential definitions in U.S.S.G. § 4B1.2.  See Defendant's Objection at 3-12.

First, an offense can be a crime of violence under the "element" prong of U.S.S.G. § 4B1.2, which requires that the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  L. Miera argues that this definition "implies that some intentional availment of force is required before an offense rises to the level of a crime of violence."  Defendant's Objection at 3 (citing United States v. Moore, 420 F.3d 1218, 12 23 (10th Cir. 2005), overruled on other grounds by United States v. Tiger, 538 F.3d 1297 (10th Cir. 2008)).  He contends that one can violate the New Mexico aggravated assault statute "without intending to cause the victim fear of injury or the active employment of force," and thus, it is not a crime of violence under U.S.S.G. § 4B1.2(a)(1).  Defendant's Objection at 5.  Although the Tenth Circuit has previously held that a conviction under New Mexico's aggravated assault statute is a crime of violence under the ACCA, United States v. Silva, 608 F.3d at 673, L. Miera argues that the same analysis is not applicable under U.S.S.G. § 4B1.1.  See Defendant's Objection at 4.

Next, an offense can be a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2).  The clause states that a crime of violence "is burglary of a dwelling, arson, or

extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2).  Although the "otherwise" language is broad, L. Miera argues that the residual clause "is not intended as a catch-all provision" and that it covers only crimes similar to the four listed at the beginning of the sentence.  Defendant's Objection at 7 (citing United States v. Benton, 639 F.3d 723, 731 (6th Cir. 2011)).  L. Miera argues that Plaintiff United States of America has not shown that the conduct underlying the conviction created a serious potential risk of physical injury to another. See Objections at 8-9.  He contends that not every crime committed with a deadly weapon is a crime of violence: while "the use of a deadly weapon may transform a lesser degree of force into the necessary 'violent force,'" L. Miera says that "the underlying crime must already have as an element some degree of, or the threat of, physical force in the more general sense (such as 'the least touching')."  Objections at 8.  "The use of a deadly weapon may exacerbate the threat of physical force, but does not necessarily supply the threat if it is not already present in the underlying crime."  Objections at 8.

Finally, an offense can be a crime of violence through specific enumeration, either in the text of U.S.S.G. § 4B1.2 itself or in the comments.  Aggravated assault is an enumerated crime in the comments to U.S.S.G. § 4B1.2.  See U.S.S.G. § 4B1.2 cmt. n.1.  L. Miera contends that a specific offense does not automatically qualify as a crime of violence simply because it has the same name as an enumerated offense, but the specific offense must fall within that crime's generic definition.  Objection at 9 (citing Taylor v. United States, 495 U.S. 575, 588-89 (1990)).  He says that "generic aggravated assault" is difficult to define, "because many states categorize assault in degrees rather than by use of the terms 'simple' or 'aggravated' and 'because some states still retain the common law distinction between assault and battery.'"  Objections at 9

(quoting United States v. McFalls, 592 F.3d 707, 716 (6th Cir. 2010)).  L. Miera also points to the Model Penal Code, which says a defendant is guilty of aggravated assault if he "(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."  Objections at 9-10 (quoting Model Penal Code § 211.1(2)).  L. Miera contends that New Mexico's definition of aggravated assault is broader than the generic and Model Penal Code's definition of aggravated assault in that it does not require specific intent to injure or frighten the victim.  See Defendant's Objection at 10 (citing United States v. Rede-Mendez, 680 F.3d 552, 557 (6th Cir. 2012)).  He argues that there "are essentially two different ways" in which an aggravated assault with a deadly weapon can be committed: one is by attempting battery, and the other is by "engaging in conduct with a deadly weapon that causes the victim to believe he or she was about to receive a battery."  Objections at 10.  Using a modified categorical approach, L. Miera contends that the documents of conviction fail to demonstrate that he had specific intent as the generic definition of aggravated assault requires.  See Objections at 10-11.

The USPO filed an Addendum to the PSR, responding to L. Miera's objections.  See Addendum to the Presentence Report ("Addendum").  It asserts that U.S.S.G. § 4B1.2's definition of crime of violence is broader than U.S.S.G. § 2L1.2's definition, but that the ACCA's definition is nearly identical.  See Addendum at 2.  Because the Tenth Circuit found New Mexico's aggravated assault with a deadly weapon offense to be a violent felony under the ACCA in United States v. Silva, the USPO maintains that L. Miera's conviction is a crime of violence for U.S.S.G. § 4B1.1 purposes.  See Addendum at 2.

The Court held a sentencing hearing on September 6, 2013.  At the hearing, L. Miera

elaborated on his point under the "element" prong of U.S.S.G. § 4B1.2.  He argued that the Court should not apply United States v. Silva, because that case dealt with the "apprehension-causing" theory of New Mexico's aggravated assault offense, but it did not address the attempted-battery theory.  Transcript of Hearing at 7:6-14 (Johnson)(taken September 6, 2013)("Tr.").[1]  L. Miera argued that the battery statute is divisible, because it provides multiple definitions for battery, and that some of the definitions are crimes of violence and some are not.  See Tr. at 7:23-8:2 (Johnson).  New Mexico defines battery as "the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner."  N.M. Stat. Ann. § 30-3-4.  Because battery includes "touching" someone in an "insolent" manner, L. Miera argued that attempted battery cannot be a crime of violence.  Tr. at 7:23-8:2 (Johnson).  Further, simply using a deadly weapon does not make it a crime of violence.  See Tr. at 9:4-8 (Johnson).

When asked whether the Tenth Circuit implicitly analyzed the attempted-battery theory of aggravated assault in United States v. Silva, see Tr. at 11:16-21 (Court), L. Miera said that the defendant in that case narrowed the question so that the court addressed only the apprehension-causing theory, see Tr. at 11:22-12:5 (Johnson).  Noting that the Tenth Circuit used the categorical approach, the Court asked how the Tenth Circuit could have reached its result without also finding that the attempted-battery theory was a crime of violence.  See Tr. at 13:1-4 (Court).  L. Miera responded that he believed the Tenth Circuit used a modified categorical approach, based on a footnote in the opinion, see Tr. at 13:5-16 (Johnson), but the Court said that, after looking at the footnote, it thought the Tenth Circuit applied the modified categorical

---

[1]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

approach and determined that the modified categorical approach did not help, because the documents of conviction tracked the statute's language, see Tr. 14:6-7 (Court).  L. Miera maintained that the Tenth Circuit applied the modified categorical approach, "because the next paragraph begins with 'in light of Silva's argument.'  So it looks like the [argument] that was [raised] by Mr. Silva basically made the Court focus on the apprehension-causing component of the aggravated assault statute."  Tr. 14:17-22 (Johnson).

The Court asked L. Miera whether he was resting his argument solely on the attempted-battery theory of aggravated assault, or if he was also looking to the third definition of assault involving insulting language.  See Tr. at 10:6-10 (Court).  L. Miera responded that the insulting-language definition is an additional reason why the statute could not categorically be a crime of violence.  See Tr. at 10:11-16 (Johnson).  The Court asked whether aggravated assault with a deadly weapon using the insulting-language definition was a viable theory in New Mexico, see Tr. at 17:10-16 (Court), and L. Miera said that, while it is probably true that no one is charged or convicted under that section, it is still possible, see Tr. at 17:17-18, 18:15-22 (Johnson).

The United States agreed with the Court that the Tenth Circuit implicitly held that the attempted-battery theory of aggravated assault is a crime of violence.  See Tr. at 19:8-10 (Meyers).  The United States also said that it did not think the insulting-language theory was viable under New Mexico law, because it could not envision a scenario where using insulting language would result in an aggravated assault.  See Tr. at 19:15-20 (Court).

## LAW REGARDING CRIMES OF VIOLENCE UNDER U.S.S.G §§ 4B1.1 AND 4B1.2

The U.S.S.G. provide for sentence enhancements when a defendant is a "career offender," defined in § 4B1.1:

A defendant is a career offender if (1) the defendant was at least eighteen years

old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.   U.S.S.G. § 4B1.1 defines "crime of violence" by reference to U.S.S.G.

§ 4B1.2.  See U.S.S.G. § 4B1.1 cmt. n.1.  U.S.S.G. § 4B1.2(a) defines "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2. The application notes to U.S.S.G. § 4B1.2(a) further provide that the term

"crime of violence" includes:

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.  Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 cmt. n.1.  An offense thus qualifies as a crime of violence if it fits one of the

three definitions from U.S.S.G. § 4B1.2: (i) the "element" prong, where the offense has as an

element "the use, attempted use, or threatened use of physical force against the person of

another," U.S.S.G. § 4B1.2(a)(1); (ii) as an enumerated crime, including (a) "burglary of a

dwelling, arson, [ ] extortion, [or] involves use of explosives," U.S.S.G. § 4B1.2(a)(2); or (b)

"murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson,

extortion, extortionate extension of credit, and burglary of a dwelling," U.S.S.G. § 4B1.2 cmt.

n.1; or (iii) the residual prong, including crimes not within the first two categories that otherwise involve "conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2).

The U.S.S.G. provide for different sentence enhancements, depending on whether a crime constitutes a "crime of violence" or a "violent felony." Although the definitions of the terms vary throughout the guidelines, case law interpreting the term "violent felony" is often persuasive to courts interpreting the term "crime of violence," and case law interpreting the term "crime of violence" is often persuasive to courts interpreting the term "violent felony." See United States v. Jackson, No. 05-8003, 2006 WL 991114, *2 (10th Cir. Apr. 17, 2006). Courts must be precise when addressing objections to the application of particular sentencing enhancements, given violations of particular criminal statutes may have different consequences depending on the verdict. A court's "analysis must be attuned to the particular statute or guideline in question." United States v. Rivera-Oros, 590 F.3d 1123, 1129 (10th Cir. 2009).

U.S.S.G. § 2L1.2 and the ACCA both employ the "use, attempted use, or threatened use of physical force" definition of crime of violence or violent felony. See 18 U.S.C. § 924(e)(2)(B)(i); U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). The ACCA also has a residual clause that is nearly identical to U.S.S.G. § 4B1.2's residual clause. See 18 U.S.C. § 924(e)(2)(B)(ii); U.S.S.G. § 4B1.2(a)(2). All three provisions list a number of specific crimes as falling within the definition of violent felonies or crimes of violence, and aggravated assault is included in both U.S.S.G. § 2L1.2 and U.S.S.G. § 4B1.2. See 18 U.S.C. § 924(e)(2)(B)(ii); U.S.S.G. § 2L1.2 cmt. n.1(B)(iii); U.S.S.G. § 4B1.2(a)(2) & cmt. n.1. Because of the similarities between the provisions, the Tenth Circuit has recognized that both the ACCA and U.S.S.G. § 2L1.2 can be useful in interpreting U.S.S.G. § 4B1.2, especially because the slight differences between the

provisions result in a broader definition of crime of violence under U.S.S.G. § 4B1.2.  See United States v. Hammons, No. CR 07-1164, 2010 WL 4321693, at *5-*9 (D.N.M. October 6, 2010)(Browning, J.).

     To determine whether a particular offense is a crime of violence under U.S.S.G. § 4B1.2, the Tenth Circuit uses a categorical approach by considering the offense generally "in terms of how the law defines the offense," rather than how a defendant may have committed the crime on a specific occasion.  United States v. Duran, 696 F.3d 1089, 1092 (10th Cir. 2012).  If the criminal statute is ambiguous or encompasses both violent and nonviolent crimes, courts will apply a modified categorical approach and look to certain records of the prior proceeding to determine which part of the statute was charged against the defendant, such as "the charging documents, the judgment, any plea thereto, and findings by the sentencing court."  United States v. Duran, 696 F.3d at 1092.  The review's purpose is to determine under which provision the defendant was charged, guiding the court to the specific part of the statute to examine.[2]  See United States v. Duran, 696 F.3d at 1092.  The Supreme Court of the United States has recently emphasized that, when a statute is indivisible, the sentencing court may not use a modified

_____

     [2] Courts employ the modified categorical approach to determine under which provision of the statute the defendant was convicted, and not to determine the specific facts for which the defendant was convicted or to which the defendant pled.  This Court previously applied the modified categorical approach to determine whether a defendant pled to facts that would be a crime of violence, see United States v. Farias-Guijarro, No. CR 07-1777 JB, 2008 WL 5993209, at *34 (D.N.M. March 26, 2008)(Browning, J.)(stating that the Court's role is to determine whether the defendant "admitted to the use of force in his prior conviction"); but Supreme Court of the United States and Tenth Circuit opinions have clarified that the modified categorical approach helps courts determine only under which provision of a statute the defendant was convicted.  See Johnson v. United States, 559 U.S. 133, 144 (2010)(noting that it approved the modified categorical approach in 2009); United States v. Dennis, 551 F.3d 986, 989 (10th Cir. 2008)(stating that the "modified categorical approach does not allow a subjective inquiry into the underlying facts of the conviction to determine whether the enhancement provision is satisfied").

categorical approach to turn the analysis into a facts-based inquiry rather than an elements-based inquiry.  See Descamps v. United States, 133 S. Ct. 2276, 2285 (2013).  The Supreme Court said that the proper use of the modified categorical approach "preserves the categorical approach's basic method: comparing those elements with the generic offense's.  All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates several different crimes."  Descamps v. United States, 133 S. Ct. at 2285.

### 1.     The "Element" Prong: the Use, Attempted Use, or Threatened Use of Physical Force Against the Person of Another.

A crime is a "crime of violence" if it is punishable by imprisonment for more than a year, and "has an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  In Leocal v. Ashcroft, 543 U.S. 1 (2004),[3] the Supreme Court of the United States interpreted the word "use" in the phrase "use, attempted use, or threatened use of physical force" under the ACCA, and said that it requires "a higher degree of intent than negligent or merely accidental conduct."  543 U.S. at 9.  The Tenth Circuit further clarified that the word "use" requires more than recklessness.  See United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir. 2008).

In Johnson v. United States, 559 U.S. 133 (2010), the Supreme Court analyzed whether a defendant's prior battery conviction under Florida law was a "violent felony" under the ACCA.  Specifically, the Supreme Court inquired whether "actually and intentionally touching another person constitutes the use of 'physical force' within the meaning of § 924(e)(2)(B)(I)."  559 U.S.

---

[3] The Supreme Court in Leocal v. Ashcroft interpreted the "element" prong under the ACCA; because the language in the element prong under the ACCA is identical to the language in the element prong under U.S.S.G. § 4B1.2, it is persuasive in interpreting U.S.S.G. § 4B1.2.

at 136-37.   The Supreme Court noted that the ACCA does not define "physical force" and "therefore [gave] the phrase it's ordinary meaning," holding that the term physical force "means violent force -- that is, force capable of causing physical pain or injury to another person."  559 U.S. at 140 (emphasis in original).

In United States v. Herron, 432 F.3d 1127 (10th Cir. 2005), the Tenth Circuit held that Colorado's menacing statute[5] constitutes a violent felony under the ACCA, because knowingly placing or attempting to place another person in fear of imminent serious bodily injury by the use of a deadly weapon constitutes the threatened use of physical force against another person.  432 F.3d at 1138.   The defendant argued that menacing is not a violent felony, because the term deadly weapon[6] is defined broadly to include a fist, foot, or whiskey bottle, meaning that menacing could include telling someone over the telephone that you are going to punch or kick them.  432 F.3d at 1138.  The Tenth Circuit stated: "A threat to kick or strike someone comes

---

[5] Under Colorado law:

A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury.  Menacing is a class 3 misdemeanor, but, it is a class 5 felony if committed:

(a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or

(b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

Colo. Rev. Stat. § 18-3-206.

[6] Colorado defines a deadly weapon as: "(I) A firearm, whether loaded or unloaded; or (II) A knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury."  Colo. Rev. Stat. § 18-1-901(3)(e).

within the ACCA definition regardless of whether a foot or bottle is a deadly weapon." 432 F.3d at 1138.

The use of physical force means a mechanical force. See United States v. Farias-Guijarro, No. CR 07-1777 JB, 2008 WL 5993209, at *35 (D.N.M. March 26, 2008)(Browning, J.)(citing United States v. Rodriguez-Enriquez, 518 F.3d 1191 (10th Cir. 2008)). In United States v. Rodriguez-Enriquez, the Tenth Circuit held that a conviction for assault two (drugging a victim), under Colorado law, is not a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). See 518 F.3d at 1191-92. Under Colorado law,

> [a] person commits the offense of assault two (drugging a victim) if "[f]or a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him, without his consent, a drug, substance, or preparation capable of producing the intended harm."

518 F.3d at 1192 (quoting Colo. Rev. Stat. Ann. § 18-3-203(1)(e))(emphasis in original). The Tenth Circuit explained: "Even if we were to agree that drugging involves the use of force, we must still decide what is added by the adjective physical." United States v. Rodriguez-Enriquez, 518 F.3d at 1193 (emphasis in original). The Tenth Circuit "reject[ed] the view that the word physical relates to the effect of the force, because if the word has that meaning, it adds nothing to the Guideline definition of crime of violence." 518 F.3d at 1194 (emphasis in original). "[T]he adjective physical must refer to the mechanism by which the force is imparted to the person of another." 518 F.3d at 1194 (emphasis in original). The Tenth Circuit explored the meaning of physical force by asking:

> In what circumstances, then, are we likely to think of the force as being generated by physical means? When someone is struck by a fist, a bat, a projectile, we have no difficulty in characterizing the force against the person as physical. In those instances the force on the victim is generated mechanically. Kinetic energy from the fist, bat, or projectile is transferred to the body of the victim. Although the

- 13 -

> matter is far from certain, the absence of colorable alternative meanings for <u>physical</u>
> suggest that it is the presence of this mechanical impact that defines when force is
> physical.  In contrast, the effect of poison on the body is achieved by chemical
> action, not by mechanical impact.

518 F.3d at 1194 (emphasis in original).  The Court has stated that the physical-force element

under U.S.S.G. § 2L1.2, which is identical to the physical-force element in U.S.S.G. § 4B1.2,

requires "mechanical, violent, physical force."   <u>United States v. Carbajal-Hernandez</u>, 636 F.

Supp. 2d 1196, 1207 (D.N.M. 2009)(Browning, J.).  The Court in <u>United States v. Moya-Matute</u>,

No. CR 07-1180 JB, 2008 WL 4104129 (D.N.M. Apr. 3, 2008)(Browning, J.), explained:

> The crime of domestic battery under Indiana law contains use of physical force as
> an element.  The Court can say that it is a crime of violence per se.  While the
> Court is reluctant to add a word that Congress did not add, <u>the Tenth Circuit has
> defined crime of violence to require that the physical force be "violent,"
> "destructive," and "mechanical"</u>.   Nevertheless, the Court believes the Indiana
> statute satisfies these elements.  The Indiana domestic-battery statute criminalizes
> the use of physical force upon a person and not just the result of that force.  The
> Indiana domestic-battery statute thus requires physical force as an element.  Thus,
> violation of the Indiana domestic-battery statute is thus per se a crime of violence.

2008 WL 4104129, at *20 (emphasis added).

## 2.    **Enumerated Crimes.**

U.S.S.G. § 4B1.2 specifically names several crimes as crimes of violence: "burglary of a

dwelling, arson, [ ] extortion, [or] involves use of explosives," U.S.S.G. § 4B1.2(a)(2); and

"murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson,

extortion, extortionate extension of credit, and burglary of a dwelling," U.S.S.G. § 4B1.2 cmt.

n.1.  Although the U.S.S.G. list specific crimes as "crimes of violence," the Supreme Court has

made clear that an offense must fit the generic definition of the listed crime to be included as a

crime of violence.  <u>Taylor v. United States</u>, 495 U.S. 575, 598 (1990).  For example, in <u>Taylor v.

United States</u>, the question was whether the word "burglary," one of the ACCA's enumerated

offenses, requires a "uniform definition independent of the labels employed by the various States' criminal codes." 495 U.S. at 592. The Supreme Court held that an offense constitutes "burglary" under § 924(e) if, regardless of its exact definition, it has the basic elements of a "generic" burglary, that is, the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 599. The Supreme Court also authorized looking to the charging paper or jury instructions to determine if the offense included all the elements of generic burglary. See 495 U.S. at 602. See also United States v. Terrell, 593 F.3d 1084, 1092 (9th Cir. 2010)(applying the categorical and modified categorical approaches "to compare [the defendant's] prior burglary offenses to the 'generic' definition of burglary set forth in Taylor"); United States v. Juarez-Galvan, 572 F.3d 1156, 1159 (10th Cir. 2009)(stating that it "must consider 'the uniform generic definition[s]' of [kidnapping and robbery, enumerated in U.S.S.G. § 2L1.2], and then determine whether the state statute[s] correspond[] to that generic definition").

### 3.     The Residual Prong: a Serious Potential Risk of Physical Injury to Another.

If a crime does not have as an element the use, attempted use, or threatened use of physical force, and is not one of the enumerated offenses, it may still be a violent felony if it "presents a serious potential risk of physical injury to another," and therefore qualifies under U.S.S.G. § 4B1.2(a)(2)'s "otherwise," or residual, clause. U.S.S.G. § 4B1.2(a)(2). The clause states that a crime of violence "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). The Supreme Court of the United States in James v. United States, 550 U.S. 192 (2007), clarified how courts should approach this "residual" prong in the ACCA, which is nearly identical to the residual prong under U.S.S.G. § 4B1.2; the Supreme

Court described the clause's preceding crimes -- "burglary, arson, or extortion, involves use of explosives" -- as offenses that, "while not technically crimes against the person, nevertheless create significant risks of bodily injury or confrontation that might result in bodily injury." 550 U.S. at 199. "Congress' inclusion of a broad residual provision . . . indicates that it did not intend the preceding enumerated offenses to be an exhaustive list of the types of crimes that might present a serious risk of injury to others . . . ." 550 U.S. at 200. The Supreme Court applied a categorical approach, looking only to "whether the <u>elements of the offense</u> are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." 550 U.S. at 202 (emphasis in original). The categorical approach does not "require[ ] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." 550 U.S at 208. The Supreme Court explained:

> [Section] 924(e)(2)(B)(ii)'s residual provision speaks in terms of a "potential risk." These are inherently probabilistic concepts. Indeed, the combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a simple "risk," much less a certainty. While there may be some attempted burglaries that do not present a serious potential risk of physical injury to another, the same is true of completed burglaries -- which are explicitly covered by the statutory language and provide a baseline against which to measure the degree of risk that a non-enumerated offense must "otherwise" present in order to qualify.

550 U.S. at 207-08 (footnote omitted). <u>See</u> <u>United States v. Dennis</u>, 551 F.3d 986, 990 (10th Cir. 2008)(acknowledging that "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious risk of injury to another," but noting that "the focus must be on the elements")(quoting <u>James v. United States</u>, 550 U.S. at 208).

The Supreme Court's decision in <u>Begay v. United States</u>, 553 U.S. 137 (2008), narrowed

the residual clause's reach, specifying that it does not encompass all potentially risky behavior. See 553 U.S. at 142. The Supreme Court viewed the listed examples -- burglary, arson, extortion, and use of explosives -- as limiting the scope of the residual clause so that only similar crimes would be included. See 553 U.S. at 142. To be similar in kind, a predicate crime must involve purposeful, violent, and aggressive conduct. See Begay v. United States, 553 U.S. at 144-45. The Supreme Court acknowledged that the New Mexico offense of driving under the influence of alcohol presents a potential risk of injury, but found that, because it is a strict liability crime, it is not similar to the purposeful, violent, and aggressive conduct required under the residual clause. See 553 U.S. at 144-45. The Tenth Circuit has further clarified that, to fall under the residual clause, the crime must be "an intentional crime -- criminal recklessness is insufficient." United States v. Duran, 696 F.3d 1089, 1091 (10th Cir. 2012)(citing United States v. Armijo, 651 F.3d 1226, 1237 (10th Cir. 2011)).

Begay v. United States prompted the Tenth Circuit to apply a two-part test to determine if a crime falls within the residual prong: first, courts consider "whether the offense 'presents a serious potential risk of physical injury to another' as required by the text of § 4B1.2"; and, second, courts "must determine whether the offense is 'roughly similar, in kind as well as degree of risk posed,' to the enumerated crimes in § 4B1.2(a)(2), namely, burglary, arson, extortion, or crimes involving explosives." United States v. McConnell, 605 F.3d 822, 826-27 (10th Cir. 2010). "A crime is 'roughly similar' to the crimes listed in § 4B1.2(a)(2) if it 'typically involve[s] purposeful, violent, and aggressive conduct.'" United States v. McConnell, 605 F.3d at 827.

The Supreme Court of the United States analyzed the ACCA's residual prong again in Sykes v. United States, 131 S. Ct. 2267 (2011). In that case, the defendant had a previous

conviction under an Indiana statute that made it "a criminal offense whenever the driver of a vehicle knowingly or intentionally flees from a law enforcement officer."  131 S. Ct. at 2270 (internal quotation marks omitted).  Turning to the residual prong, the Supreme Court said "a crime involves the requisite risk when 'the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses.'"  131 S. Ct. at 2273 (alteration in original)(quoting United States v. James, 550 U.S. at 203).  The Supreme Court noted the danger inherent when a perpetrator flees from police in a vehicle, endangering pedestrians, other drivers, and the police, who will, "in a legitimate and lawful manner, exceed or almost match his speed or use force to bring him within their custody."  Sykes v. United States, 131 S. Ct. at 2273. The defendant argued that vehicle flight does not involve purposeful, violent, and aggressive behavior, but the Supreme Court explained that the phrase "purposeful, violent, and aggressive" is "an addition to the statutory text," and that it applied that phrase in United States v. Begay to explain the result when the relevant crime involves strict liability, negligence, or recklessness. Sykes v. United States, 131 S. Ct. at 2275-76.

In United States v. Neal, 505 F. App'x 755 (10th Cir. 2012)(unpublished),[4] the Tenth

---

[4] United States v. Neal is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that United States v. Neal, and United States v. Gastelum-Laurean, 370 F. App'x 938, 941

- 18 -

Circuit analyzed whether a Colorado conviction for larceny was a crime of violence under U.S.S.G. § 4B1.2. It explained that "[t]he method for determining whether an offense falls into the residual clause has been admittedly inconsistent." United States v. Neal, 505 F. App'x at 757. Examining the interplay between Begay v. United States and United States v. Sykes, the Tenth Circuit said that "Sykes limited Begay's 'purposeful, violent, and aggressive' inquiry only to strict-liability, negligence, or recklessness crimes," and that when the offense requires intentional conduct, the proper inquiry is whether the offense is "similar in risk to the listed crimes." United States v. Neal, 505 F. App'x at 757. Turning to the larceny conviction, the Tenth Circuit noted that larceny from a person creates a significant risk of confrontation between the thief and the victim, and that risk was similar to the risk posed by burglary, which is dangerous because of the possibility that "'an innocent person might confront the burglar during the crime.'" 505 F. App'x at 757-58 (quoting James v. United States, 505 U.S. at 194)).

When confronted with the question whether the Supreme Court's "shifting jurisprudence on the proper test used to determine whether a crime qualifies under the residual clause renders the statute impermissibly vague," the Tenth Circuit said:

> Although we have previously noted that "[t]he Supreme Court's holding in Sykes is not a model of clarity," United States v. Sandoval, 696 F.3d 1011, 1017 n.8 (10th Cir. 2012), we have nevertheless distilled a comprehensible test from the Court's residual clause cases: "[A]fter Sykes, it is not necessary to reach Begay's purposeful inquiry when the mens rea of the offense requires intentional conduct. In such cases, we ask instead whether the crime is similar in risk to the listed crimes in the ACCA." United States v. Maldonado, 696 F.3d 1095, 1103 (10th Cir. 2012) (quotations, citation, and alteration omitted).

United States v. Orona, 724 F.3d 1297, 1311 (10th Cir. 2013). It appears that the Tenth Circuit's

_____

(10th Cir. 2010)(unpublished), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

"comprehensible test" is to apply the previous two-part analysis, first looking to see if the offense creates a serious potential risk of physical injury to another, and then determining if the offense is "roughly similar" to an enumerated crime; under the "roughly similar" question, the Tenth Circuit has said that it is "not necessary to reach Begay's purposeful inquiry when the mens rea of the offense requires intentional conduct," but its practice has been to apply both the "purposeful, violent, and aggressive" test and the "similar in risk" test.   United States v. Maldonado, 696 F.3d at 1103 (stating that "[r]egardless of which test we apply, California's first-degree burglary offense is 'roughly similar' to the enumerated crime of generic burglary," and proceeding to apply both tests); United States v. Sandoval, 696 F.3d at 1016-17 (stating that, "[e]ven if we were to consider the mitigating clause and apply the Begay test, it would make no difference").   The Tenth Circuit explained:

> In Sandoval, we acknowledged that Sykes's holding is "not a model of clarity." 696 F.3d at 1017, n. 8.  For this reason, we applied both tests, concluding that Colorado's second-degree assault offense was both similar in risk to enumerated offenses and that it involved violent, purposeful, and aggressive conduct. Id. at 1015–17.

United States v. Maldonado, 696 F.3d at 1103 n.7. While "[t]he Supreme Court has applied only the categorical approach in residual clause cases," the Tenth Circuit "has not explicitly foreclosed that the modified categorical approach could be used in the appropriate case."  United States v. Maldonado, 696 F.3d at 1100 n.4.

## ANALYSIS

L. Miera does not dispute that one of his previous convictions -- intent to distribute cocaine -- qualifies as a predicate offense for the U.S.S.G. § 4B1.1 enhancement.  Instead, he argues that his New Mexico conviction under N.M. Stat. Ann. § 30-3-2(A), aggravated assault with a deadly weapon, is not a crime of violence and thus not a predicate offense for enhanced

- 20 -

sentencing.  He contends that, although the Tenth Circuit concluded in United States v. Silva that New Mexico's aggravated assault with a deadly weapon is a violent felony under the ACCA, that decision does not apply to defining a crime of violence under U.S.S.G. § 4B1.2.  He argues that N.M. Stat. Ann. § 30-3-2(A), is a divisible statute, because it encompasses a broader range of conduct than what would qualify as a crime of violence, and thus he urges the Court to apply the modified categorical approach to determine if L. Miera violated the portion of the statute that qualifies as a crime of violence.  Because the modified categorical approach does not indicate under which portion of the statute L. Miera was convicted, he argues that the Court cannot apply the U.S.S.G. § 4B1.2 career offender enhancement.  The Court concludes that cases interpreting the phrase "violent felony" under the ACCA are persuasive in interpreting "crime of violence" under U.S.S.G. § 4B1.2.  The Tenth Circuit in United States v. Silva held that aggravated assault with a deadly weapon is categorically a crime of violence, because it has as an element the "use, attempted use, or threatened use of physical force against the person of another."  608 F.3d at 674.  That analysis binds the Court to conclude that L. Miera's previous conviction for aggravated assault with a deadly weapon is a crime of violence, subjecting him to the enhanced sentencing requirements of U.S.S.G. § 4B1.2 career-offender provisions.  The Court notes, however, that without the controlling precedent in United States v. Silva, it would find that aggravated assault with a deadly weapon is not categorically a crime of violence under U.S.S.G. § 4B1.2's element prong, because as the dissent in United States v. Silva observed, committing an aggravated assault under the apprehension-causing theory of assault, which defines assault as "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery," does not have as an element the threatened use of force as required by U.S.S.G. § 4B1.2.  The Court would conclude that the

attempted-battery theory of aggravated assault is a crime of violence under the element prong, but that the third theory of aggravated assault, involving the use of insulting language, is not a viable theory of aggravated assault with a deadly weapon under New Mexico law.  The Court would not find that New Mexico's aggravated assault with a deadly weapon is similar enough to generic "aggravated assault" to qualify as a crime of violence as an enumerated crime, but the Court would conclude that aggravated assault with a deadly weapon is categorically a crime of violence under U.S.S.G. § 4B1.2's residual prong, because it "involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2), and it is roughly similar in kind and degree of risk as burglary, an enumerated crime in U.S.S.G. § 4B1.2(a)(2). Although the Court would reach the same result as the Tenth Circuit -- that New Mexico's aggravated assault with a deadly weapon is categorically a crime of violence under U.S.S.G. § 4B1.2, and a violent felony under the ACCA -- it would come to that conclusion using the residual prong rather than the element prong.  The Tenth Circuit's analysis and holding control, and the Court will thus overrule Miera's objection to the PSR.

New Mexico defines assault with a deadly weapon as "unlawfully assaulting or striking at another with a deadly weapon."  N.M. Stat. Ann. § 30-3-2(A).  New Mexico in turn defines assault as:

A. an attempt to commit a battery upon the person of another;

B. any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or

C. the use of insulting language toward another impugning his honor, delicacy or reputation.

N.M. Stat. Ann. § 30-3-1.  For New Mexico's aggravated assault with a deadly weapon to categorically be a crime of violence, all the variations from the applicable subsection definitions

of assault must also fall within the crime of violence definition.

I.     **THE COURT IS BOUND BY THE TENTH CIRCUIT'S OPINION IN <u>UNITED STATES V. SILVA</u>, REQUIRING THE COURT TO CONCLUDE THAT NEW MEXICO'S AGGRAVATED ASSAULT WITH A DEADLY WEAPON IS CATEGORICALLY A CRIME OF VIOLENCE UNDER THE ELEMENT PRONG OF U.S.S.G. § 4B1.2.**

Under U.S.S.G. § 4B1.2's "element" prong, a crime is a crime of violence if it is punishable by imprisonment for more than a year and "has an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  Three United States Courts of Appeals have analyzed whether New Mexico's aggravated assault with a deadly weapon is a crime of violence, resting on different portions of the statute and coming to different conclusions: in 2007, the United States Court of Appeals for the Fifth Circuit focused on the first theory of aggravated assault, which involves an attempted battery, and held that it was a crime of violence under the element prong of U.S.S.G. § 2L1.2, see <u>United States v. Licon-Nunez</u>, 230 F. App'x 448 (5th Cir. 2007); in 2010, the Tenth Circuit analyzed the second theory of aggravated assault, which involves causing another person to reasonably believe he is in danger of an immediate battery, and held that it was a violent felony under the ACCA, <u>United States v. Silva</u>, 608 F.3d 663 (10th Cir. 2010); and in 2012, the Sixth Circuit based its conclusion that aggravated assault with a deadly weapon is not a crime of violence under U.S.S.G. § 2L1.2 on the third variation of aggravated assault, involving the use of insulting language, see <u>United States v. Rede-Mendez</u>, 680 F.3d 552 (6th Cir. 2012).  Because these cases interpret the same "use, attempted use, or threatened use of physical force" language, they are probative in interpreting U.S.S.G. § 4B1.2.  See <u>United States v. Hammons</u>, No. CR 07-1164, 2010 WL 4321693, at *6, 8 (D.N.M. October 6, 2010)(Browning, J.); <u>United States v. Rede-Mendez</u>, 680 F.3d at 555 n.2.

A.   **UNDER CONTROLLING TENTH CIRCUIT PRECEDENT, APPREHENSION-CAUSING AGGRAVATED ASSAULT IS A CRIME OF VIOLENCE.**

One theory of aggravated assault with a deadly weapon can be called apprehension-causing aggravated assault, because it relies on defining assault as "any unlawful act, threat, or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery . . . ."  N.M. Stat. Ann. § 30-3-1(B).  See United States v. Silva, 608 F.3d at 669.  The Tenth Circuit has spoken most clearly regarding this definition, holding that an apprehension-causing aggravated assault is a violent felony under the ACCA.  United States v. Silva, 608 F.3d at 670.  Writing for the majority, the Honorable Mary Beck Briscoe, Chief Judge of the United States Court of Appeals for the Tenth Circuit, joined by the Honorable Bobby Baldock, Circuit Judge for the Tenth Circuit, described apprehension-causing aggravated assault as requiring "proof that [the] defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery."  United States v. Silva, 608 F.3d at 670 (alteration in original)(citing State v. Bachica, 1991-NMCA-014, 111 N.M. 601, 607 808 P.2d 51, 54).  The majority noted that New Mexico defines aggravated assault as a general intent crime, "which the New Mexico Supreme Court defines as 'conscious wrongdoing or the purposeful doing of an act the law declares to be a crime.'"  608 F.3d at 670 (quoting State v. Campos, 1996-NMSC-043 ¶ 38 n.5, 122 N.M. 148, 921 P.2d 1266).  Incorporating the definition of "deadly weapon," the majority defined the apprehension-causing theory of aggravated assault with a deadly weapon as requiring "proof that a defendant purposefully threatened or engaged in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm . . . ."  608 F.3d at 670.  The Tenth Circuit specifically analyzed this crime under the ACCA's element prong,

requiring that the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another."  608 F.3d at 669.  In determining the meaning of "physical force" in the ACCA's element prong, the Tenth Circuit relied on the Supreme Court's definition in Johnson v. United States, defining "physical force" under U.S.C. § 924(e)(2)(B)(i): "the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person."  United States v. Silva, 608 F.3d at 669 (emphasis in original)(citing Johnson v. United States, 559 U.S. 133 at 140).

> Threatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of "violent force" because by committing such an act, the aggressor communicates to his victim that he will potentially use "violent force" against the victim in the near-future.  Additionally, "apprehension causing" aggravated assault threatens the use of "violent force" because the proscribed conduct always has the potential to lead to "violent force."

United States v. Silva, 608 F.3d at 670-71 (emphasis in original).  Chief Judge Briscoe analyzed a line of cases interpreting "aggravated battery statutes that criminalized intentional physical contact with a deadly weapon" and concluded that the apprehension-causing theory of aggravated assault "creates a commensurate threat of physical force such that the crime qualifies as a violent felony under the ACCA."  608 F.3d at 672.

> Purposefully threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of "force capable of causing physical pain or injury" in two different ways.  The conduct could always lead to substantial and violent contact, and thus it would always include as an element the threatened use of violent force.  And the conduct could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force.

608 F.3d at 672 (citations and internal quotation marks omitted).  In response to Silva's argument that a conviction under the apprehension-causing theory did not require proof that the defendant intended to cause the victim to feel threatened, the majority wrote that aggravated

- 25 -

assault requires general criminal intent and that his argument "only confirms that aggravated assault is not a specific intent crime, but rather is a general intent crime."  608 F.3d at 673.  "The presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA."  608 F.3d at 673.  The majority held that the apprehension-causing theory of aggravated assault with a deadly weapon has as an element the "use, attempted use, or threatened use of physical force against the person of another," and thus, it is a violent felony under the ACCA.  608 F.3d at 674.

In the dissenting opinion in United States v. Silva, the Honorable Harris Hartz, Circuit Judge for the Tenth Circuit, explained that, under his view of New Mexico law, "one can be guilty of assault (including assault with a deadly weapon) if one causes the victim reasonably to believe that he or she is about to be battered, even if one does not intend to create that belief." 608 F.3d at 675.  He provided an illustration that, in his view, would be an aggravated assault with a deadly weapon under New Mexico law but would not be a violent felony under the ACCA:

> For example, a person who intentionally handles a weapon in a manner that induces a fear of battery can be guilty of assault even if he merely wants to show off his dexterity in handling the weapon, without any interest in inducing fear. This feature of the New Mexico crime of assault is significant because, as I understand the precedents of the Supreme Court and this circuit, an offense does not have "as an element the threatened use of physical force against the person of another" unless an element of the offense is that the offender intend that the victim feel threatened.

608 F.3d at 675 (Hartz, J., dissenting)(emphasis in original).  Chief Judge Briscoe addressed this concern in the majority opinion, stating that "apprehension-causing aggravated assault requires proof of more than the display of dexterity in handling a weapon; the crime requires proof that a defendant purposefully threatened or engaged in menacing conduct toward a victim, with a

weapon capable of producing death or great bodily harm."   608 F.3d at 674 (emphasis in original)(citing State v. Bachicha, 1991-NMCA-014, 111 N.M. 601, 607, 808 P.2d 51, 54).  The majority emphasized the word "toward" throughout its opinion, and originally cited to State v. Bachicha for that language: "[The apprehension-causing] theory of aggravated assault 'requires proof that [the] defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery.'"  608 F.3d at 670 (quoting State v. Bachicha, 111 N.M. at 607, 808 P.2d at 54).   The problem with Chief Judge Briscoe's reliance on the word "toward" is that it is not entirely clear that New Mexico courts would consistently apply that limitation.

In State v. Bachicha, the Court of Appeals of New Mexico, in an opinion written by the Honorable Thomas A. Donnelly, Judge for the Court of Appeals of New Mexico, which Honorable A. Joseph Alarid, Chief Judge for the Court of Appeals of New Mexico joined, considered whether aggravated assault with a deadly weapon was a lesser included offense of false imprisonment by use of a firearm.  See 111 N.M. at 605, 808 P.2d at 52.  The Honorable Harris L. Hartz, then Judge for the Court of Appeals of New Mexico and now a Judge on the Tenth Circuit, specially concurred, but only in the judgment.  That court described aggravated assault as requiring "proof that defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery."  111 N.M. at 607, 808 P.2d at 54 (citing State v. Manus, 93 N.M. 95, 597 P.2d 280 (1979), overruled on other grounds by Sells v. State, 98 N.M. 786, 653 P.2d 162 (1982); N.M. Stat. Ann. § 30-3-2).  This statement is over- and under-inclusive compared to language in N.M. Stat. Ann. § 30-3-1: it excludes "unlawful" acts, listing instead only threatening or menacing conduct, excludes the limitation that the victim must "reasonably"

- 27 -

believe he is in danger, and adds the explanation that the conduct must be "toward" the victim.

N.M. Stat. Ann. § 30-3-1.  The Court of Appeals of New Mexico in <u>State v. Bachicha</u> cited <u>State v. Manus</u> for this proposition, which is confusing, because <u>State v. Manus</u> involved an unlawful act, not a threat or menacing conduct, and did not rely on the conduct being directed "toward" the victim.   In <u>State v. Manus</u>, a police officer stopped Manus' wife for driving violations, arrested her, and placed her in a police car parked in front of Manus' home.  <u>See</u> 93 N.M. at 98, 597 P.2d at 283.  A woman named Lesher stopped to report an accident, and she and the officer were filling out an accident report when Manus approached the vehicles with a loaded shotgun, shot twice, and killed the officer.  <u>See</u> 93 N.M. at 98, 597 P.2d at 283.  Manus was charged with aggravated assault on Lesher, which he challenged, "because there was no evidence of any intentional assault directed at Lesher." 93 N.M. at 99, 597 P.2d at 284.  The Supreme Court of New Mexico explained that

> [t]he State was not required to prove that Manus intended to assault Lesher, but only that he did an unlawful act which caused Lesher to reasonably believe that she was in danger of receiving an immediate battery, that the act was done with a deadly weapon, and that it was done with a general criminal intent.

93 N.M. at 99, 597 P.2d at 284.  The situation in <u>State v. Manus</u> does not indicate that the conduct must be directed toward a victim to qualify as an aggravated assault.

Judge Hartz analyzed <u>State v. Manus</u> as well as <u>State v. Morales</u>, 2002-NMCA-052, 132 N.M. 146, 45 P.3d 406, <u>overruled on other grounds by</u> <u>State v. Tollardo</u>, 2012-NMSC-008, 275 P.3d 110, to demonstrate that "one can violate the New Mexico aggravated-assault statute without intending to injure the victim or even intending to cause the victim to fear injury."  608 F.3d at 678.  In that case, the defendant's car brushed by a police officer as the defendant drove out of a vacant lot.  <u>See</u> 2002-NMCA-052 ¶ 5.  The defendant challenged his conviction for

aggravated assault, saying that he was "simply trying to leave the vacant lot," but the Court of Appeals, in a case written by the Honorable Richard C. Bosson, Chief Judge for the Court of Appeals of New Mexico and now Justice on the Supreme Court of New Mexico, joined by the Honorable Jonathan B. Sutin and the Honorable Celia Foy Castillo, found sufficient evidence to support the conviction:

> To convict Defendant of aggravated assault on a peace officer, the State was not required to prove that Defendant intended to injure or even frighten Deputy Luevano. Instead, the State was required to prove, and the jury was so instructed, that Defendant's conduct caused Deputy Luevano to believe Defendant was about to hit him with his vehicle, that a reasonable person in Deputy Luevano's position would have believed he was about to be hit by the vehicle, and that Defendant's conduct threatened Deputy Luevano's safety. Deputy Luevano testified that he thought he was going to be hit by the vehicle and that the vehicle was so close that he could feel it brush his clothes as it went by. This is sufficient evidence to support the conviction.

State v. Morales, 2002-NMCA-052 ¶¶ 35-36.

Although Judge Hartz did not address Chief Judge Briscoe's emphasis on the word "toward," which Chief Judge Briscoe quoted from State v. Bachicha, it is interesting to note that, before Judge Hartz was appointed to the Tenth Circuit, he was a judge for the Court of Appeals of New Mexico and sat on the panel that decided State v. Bachicha. He specially concurred in that case, agreeing with the outcome but disagreeing with the merger analysis; he did not address the majority's analysis of aggravated assault. See State v. Bachicha, 111 N.M. at 609, 808 P.2d at 59 (Hartz, J., specially concurring). In United States v. Silva, Judge Hartz did not address the language from State v. Bachicha, but in citing State v. Manus and State v. Morales, he emphasized that a defendant can be convicted without intending to injure or threaten a victim. See United States v. Silva, 608 F.3d at 678. Although "aggravated assault must be 'done with a general criminal intent,'" Judge Hartz contended that "the requirement of 'general criminal

- 29 -

intent' does not resolve the issue," because that term is "extremely vague and subject to many possible meanings." United States v. Silva, 608 F.3d at 678. "In particular, general intent may mean 'only the intention to make the bodily movement which constitutes the act which the crime requires.'" United States v. Silva, 608 F.3d at 678 (Hartz, J., dissenting)(quoting 1 Wayne R. LaFave, Substantive Criminal Law § 5.2(e), at 355 (2d ed. 2003)). In New Mexico, the Uniform Jury Instructions describe general intent: "A person acts intentionally when he purposely does an act which the law declares to be a crime." UJI 14-141 NMRA.[5] Noting that the Court of Appeals of New Mexico has endorsed the LaFave and Uniform Jury Instructions definitions, Judge Hartz said this definition is inconsistent with the ACCA requirement that, to be a violent felony, the "necessary intent is an intent to apply physical force against another person or to induce fear of such force." United States v. Silva, 608 F.3d at 679 (Hartz, J., dissenting).

Judge Hartz noted that the Supreme Court of the United States has required that "'the use of physical force against the person of another' requires an intent to use force against another," and so he would "conclude that 'the threatened use of physical force against the person of another'" should "likewise require[] an intentional threat -- that is, conduct performed with an intent to induce fear of a battery or to commit a battery." 608 F.3d at 676 (Hartz, J., dissenting)(emphasis in original). "It would be passing strange to say that the term violent felony encompasses the application of physical force only if the offender intends to apply the force, but it encompasses acts inducing fear of the application of physical force even when there is no intent to injure or frighten." 608 F.3d at 676 (Hartz, J., dissenting)(emphasis in original).

---

[5] The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law. See State v. Wilson, 1994-NMSC-009, 116 N.M. 793, 796, 867 P.2d 1175, 1178.

The Court agrees that, to read the element prong in the ACCA and U.S.S.G. § 4B1.2 consistently, it must apply the same intent element that the Supreme Court of the United States has applied to "the use" of physical force to "the threatened use" of physical force.  Part of the difficulty is that the word "threatened" in the element prong -- "has an element the use, attempted use, or threatened use of physical force against the person of another" -- is ambiguous.

Black's Law Dictionary defines "threat" as

> 1. A communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent . . . .
>
> 2. An indication of an approaching menace . . . .
>
> 3. A person or thing that might well cause harm . . . .

Black's Law Dictionary 1273 (9th ed. 2010).  It is not clear whether a defendant has to make a threat, as understood in the first definition of "threat," so that the defendant must communicate his or her intent of using physical force against another, or if a defendant's conduct satisfies the element prong if another person feels threatened, as understood by the latter definitions, without requiring any intent by the defendant to cause that person to feel threatened.  The Court agrees with Judge Hartz that this first definition is the better understanding of the element prong, which requires that the defendant intentionally communicate a threat to use physical force against the other person.  "Intentionally" does not necessarily mean that there must be specific intent, but there must be something greater than recklessness, because that greater intent would be consistent with what the Supreme Court of the United States and the Tenth Circuit have said regarding the element prong: that the "use of physical force" against another person requires "a higher degree of intent than negligent or merely accidental conduct," Leocal v. Ashcroft, 543 U.S. at 9, and more than recklessness, see United States v. Zuniga-Soto, 527 F.3d at 1124.

Although there will be situations in which a defendant is guilty of aggravated assault with a deadly weapon by intentionally communicating a threat to the victim, the statute contemplates situations in which the defendant is guilty when he commits an unlawful act, even without intending to communicate a threat against another person.  Even if the defendant has general intent to commit the unlawful act, he may not necessarily have any intent to use, attempt to use, or threaten to use physical force on another person.  Judge Hartz presented one such example, and another can be seen by slightly altering the facts in <u>United States v. Manus</u>.  In that case, Manus shot a police officer who was standing next to Lesher, causing Lesher to reasonably believe that she was in danger of receiving an immediate battery.  <u>See United States v. Manus</u>, 93 N.M. at 98, 597 P.2d at 283.  In that situation, Manus saw Lesher with the officer, and although he did not intend to cause her to fear a battery, it is arguable that he at least knew he was placing her in such fear.  <u>See United States v. Manus</u>, 93 N.M. at 98, 597 P.2d at 283.  In a slightly different situation, however, Manus might not have any idea that he could place another person in fear of receiving an immediate battery, yet still be guilty of an aggravated assault.  For example, if the defendant could not see Lesher, because she was standing in a way that a vehicle completely hid her from his view, and if the police officer was the only person the defendant saw in the area, Manus could still be guilty of aggravated assault against Lesher if he shot the police officer with general intent, and Lesher thought Manus could see her and so reasonably believed that he would shoot her as well.  Manus would have committed the unlawful act with general intent, and caused Lesher to reasonably believe that she was in danger of receiving an immediate battery.  The analysis upholding the conviction would equally be true:

> The State was not required to prove that Manus intended to assault Lesher, but only that he did an unlawful act which caused Lesher to reasonably believe that she was in danger of receiving an immediate battery, that the act was done with a

deadly weapon, and that it was done with a general criminal intent.

United States v. Manus, 93 N.M. at 99, 597 P.2d at 284.

The Court agrees with Judge Hartz that, under New Mexico law, a defendant may commit an aggravated assault with a deadly weapon without intending to threaten the use of physical force against a victim, and because of that, it is not a violent felony under the ACCA. The Court is not, however, free to disregard the majority's conclusion that aggravated assault with a deadly weapon in New Mexico is a violent felony under the ACCA, and further, because the ACCA involves the same "element" language as U.S.S.G. § 4B1.2, the majority's analysis controls the outcome in this case.  Even though the Court might conclude differently on a blank slate, the conclusion in United States v. Silva requires the Court to view the apprehension-causing theory of aggravated assault as a crime of violence under U.S.S.G. § 4B1.2.

### B.  THE ATTEMPTED-BATTERY THEORY OF AGGRAVATED ASSAULT WITH A DEADLY WEAPON IS A CRIME OF VIOLENCE.

Another theory of aggravated assault with a deadly weapon involves defining assault as "an attempt to commit a battery upon the person of another."  N.M. Stat. Ann. § 30-3-1(a). L. Miera contends that aggravated assault under the attempted-battery theory is not a crime of violence, because battery is a divisible offense, meaning that there is a way to violate the statute without committing a crime of violence.  New Mexico defines battery as "the unlawful touching or application of force to the person of another, when done in a rude, insolent or angry manner." N.M. Stat. Ann. § 30-3-4.  L. Miera's objection is to the possibility of attempting an "insolent" touching.  Because he contends that United States v. Silva addressed only the narrow question whether the apprehension-causing subsection is a crime of violence, L. Miera argues that analysis does not apply in this case.

- 33 -

Implicit in Chief Judge Briscoe's opinion in United States v. Silva, however, is that the attempted-battery provision is a crime of violence.  See 608 F.3d at 669.  The Tenth Circuit expressly recognized two theories of aggravated assault with a deadly weapon in New Mexico: (i) attempting a battery with a deadly weapon, and (ii) apprehension-causing aggravated assault. See 608 F.3d at 669.  After noting that a modified categorical approach did not reveal to which theory Silva pleaded guilty, the Tenth Circuit focused only on the apprehension-causing aggravated assault theory.  See 608 F.3d at 670.  Chief Judge Briscoe did not expressly address whether an aggravated assault under the attempted-battery theory was a violent felony, but based on that she fully analyzed only the apprehension-causing theory and still found the defendant's previous conviction categorically a crime of violence, she had to have concluded that aggravated assault under the attempted-battery theory is a crime of violence.  Even without that implicit finding, Chief Judge Briscoe's analysis supports the conclusion that, even an "insolent" touching with a deadly weapon would be a crime of violence, because she reviewed cases analyzing aggravated battery statutes that criminalized intentional physical contact with a deadly weapon. See United States v. Silva, 608 F.3d at 671-72 (citing United States v. Treto-Martinez, 421 F.3d 1156 (10th Cir. 2005); United States v. Dominguez, 479 F.3d 345 (5th Cir. 2007)).  In United States v. Treto-Martinez, the Tenth Circuit reviewed a Kansas conviction for aggravated battery against a law enforcement officer and concluded that it qualified as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A).  See 421 F.3d at 1162.  One of the ways of committing aggravated battery involved "intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon."  United States v. Treto-Martinez, 421 F.3d at 1158.  The Tenth Circuit concluded that "all intentional physical contact with a deadly weapon done in a rude, insulting or angry manner does constitute physical force under

- 34 -

§ 2L1.2(b)(1)(A)."   United States v. Treto-Martinez, 421 F.3d at 1159.   Likewise, the Fifth Circuit concluded that a Florida conviction for aggravated battery was categorically a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A), even though the elements required only "intentionally (1) touching or striking the victim (2) with a deadly weapon (3) against the victim's will." United States v. Dominguez, 479 F.3d at 347-48.   The Fifth Circuit concluded that "the touching of an individual with a deadly weapon creates a sufficient threat of force to qualify as a crime of violence."   United States v. Dominguez, 479 F.3d at 348.   New Mexico's definition of battery requires more than simply touching an individual with a deadly weapon -- it requires at least touching in an "insolent" manner, similar to the "insulting" manner that the Tenth Circuit has previously considered enough to threaten future use of physical force.

An unpublished opinion from the Fifth Circuit also supports the proposition that New Mexico's aggravated assault with a deadly weapon is a crime of violence using the attempted-battery theory.   See United States v. Licon-Nunez, 230 F. App'x. at 450.   In that case, the Fifth Circuit looked to the defendant's indictment, which tracked N.M. Stat. Ann. § 30-3-2(A)'s language, charging that he "did assault or strike at Cesar Esparza with a deadly weapon, to wit: a knife, a fourth degree felony contrary to Section 30-3-2A NMSA 1978."   230 F. App'x. at 451. The Fifth Circuit then viewed New Mexico's Uniform Jury Instruction 14-304, outlining that, to be convicted of aggravated assault with a deadly weapon, a defendant must "(1) try to touch or apply force to the victim, (2) act in a rude, insolent, or angry manner, (3) use a deadly weapon, and (4) intend to touch or apply force to the victim."   230 F. App'x. at 451 (citing UJI 14-304 NMRA).   The defendant argued that, because the offense could be committed through offensive touching rather than through the application of force, it was not a crime of violence using the element prong, which required the "attempted use, or threatened use of physical force."   230 F.

- 35 -

App'x. at 451-52.  The Fifth Circuit disagreed and held that "the attempt to offensively touch a victim with a deadly weapon combined with the intent to do the same is enough to give rise to a threatened use of force . . . ."  230 F. App'x. at 452.

The Court finds the analysis in United States v. Silva and United States v. Licon-Nunez persuasive, and concludes that the attempted-battery theory of aggravated assault with a deadly weapon is a crime of violence under U.S.S.G. § 4B1.2, because even if the defendant intends only an insolent touching with a deadly weapon, that intended act communicates a threat to use physical force.  Regarding the first two subsection definitions of New Mexico's aggravated assault with a deadly weapon, application of United States v. Silva requires the Court to conclude that aggravated assault with a deadly weapon is categorically a crime of violence under U.S.S.G. § 4B1.2.

## C.   THE THIRD DEFINITION OF ASSAULT, USING INSULTING LANGUAGE, IS NOT A VIABLE FORM OF AGGRAVATED ASSAULT WITH A DEADLY WEAPON IN NEW MEXICO.

While neither the Fifth nor the Tenth Circuits directly addressed whether an aggravated assault under the "insulting language" would be a crime of violence, the Sixth Circuit did.  The Sixth Circuit analyzed the "insulting language" subsection definition, and because of the breadth of that phrase, held that an aggravated assault under New Mexico law was not categorically a crime of violence under the element prong.  United States v. Rede-Mendez, 680 F.3d 552, 559 (6th Cir. 2012).  The Sixth Circuit recognized in a footnote that prosecutions under the "insulting language" prong may be rare, but stated:

> [T]he provision remains part of the New Mexico criminal code and thus available to prosecutors in that state.  The likelihood that a defendant's conviction was based on a particular version of the offense is not a factor in the crime of violence analysis. . . .  New Mexico courts have never held that an aggravated-assault conviction cannot be based on an "insulting language" assault.

- 36 -

680 F.3d at 558 n.7.

Although New Mexico courts have "never held that an aggravated-assault conviction <u>cannot</u> be based on an 'insulting language' assault," 680 F.3d at 558 n.7 (emphasis added), the Honorable Richard Griffin, Circuit Judge for the Sixth Circuit, noted in his dissent that, "as common and legal sense would dictate," New Mexico courts do not recognize the insulting-language theory of aggravated assault with a deadly weapon.  680 F.3d at 563 (Griffin, J., dissenting).  There are several reasons that the Court concludes that this assessment of New Mexico law is accurate.  First, there are New Mexico Uniform Jury Instructions for aggravated assault for "attempted battery with a deadly weapon," "threat or menacing conduct with a deadly weapon," and a combined instruction, but not a jury instruction for the insulting-language prong.  UJI 14-304-06 NMRA.  The absence of a jury instruction on the insulting-language theory of aggravated assault has similarly led other courts and parties to believe that New Mexico recognizes only two theories of aggravated assault.  The Tenth Circuit, after stating that "New Mexico . . . defines an assault as an attempted battery, certain use of insulting language, or 'any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery,'" said that Silva argued that there were only two theories of aggravated assault.  <u>United States v. Silva</u>, 608 F.3d at 669.  The Tenth Circuit did not correct him and instead cited to the Uniform Jury Instructions as describing those alternate theories.  <u>See</u> <u>United States v. Silva</u>, 608 F.3d at 669.  Even in this case, L. Miera initially argued in his written objections that the New Mexico recognized two theories for aggravated assault with a deadly weapon, citing to the UJIs, <u>see</u> Objections at 10, although he argued all three theories at the hearing after the Court asked about the insulting-language theory.

In addition to the lack of a jury instruction on the insulting-language theory, there is also support in State v. Mascarenas, 1974-NMCA-100, 86 N.M. 692, 526 P.2d 1285.  In that case, the defendant, who was convicted for aggravated assault with a deadly weapon under NMSA 1953, § 40A-3-2(A), the predecessor statute to N.M. Stat. Ann. § 30-3-2, challenged the jury instructions from his trial, which followed the language of the applicable statutes.  See 86 N.M. at 694, 526 P.2d at 1287.  The Court of Appeals of New Mexico identified the applicable statutes:

> (a) § 40A-3-2(A), supra, defining aggravated assault in terms of an unlawful assault with a deadly weapon; (b) § 40A-3-1, N.M.S.A.1953 (2d Repl. Vol. 6), defining assault in terms of either an attempt to commit a battery or any unlawful act, threat or menacing conduct causing a reasonable belief of receiving an immediate battery; and (c) § 40A-3-4, N.M.S.A.1953 (2d Repl. Vol. 6) defining battery in terms of an unlawful, intentional touching or application of force.

86 N.M. at 694, 526 P.2d at 1287.  In conjunction with aggravated assault with a deadly weapon, the Court of Appeals of New Mexico defined assault using only two definitions -- "an attempt to commit a battery" or "any unlawful act, threat or menacing conduct causing a reasonable belief of receiving an immediate battery" -- but did not define assault using the third definition, "the use of insulting language toward another impugning his honor, delicacy or reputation" even though that third definition was part of the assault statute when the Court of Appeals of New Mexico decided State v. Mascarenas.  See 86 N.M. at 694, 526 P.2d at 1287; NMSA 1953, § 40A-3-1 (1972).

These sources lead the Court to conclude that New Mexico does not recognize the insulting-language theory for aggravated assault.  The Court believes that a New Mexico state court would, in an aggravated assault case, always give UJI 14-304 or UJI 14-305, and even if a prosecutor tried to charge a defendant for aggravated assault with a deadly weapon based on the

insulting-language definition, the court would be obligated, under the UJIs, to give either 14-304 or 14-305.

**II.      ALTHOUGH THE COMMENTS TO U.S.S.G. § 4B1.2 LIST AGGRAVATED ASSAULT AS AN ENUMERATED OFFENSE, NEW MEXICO'S AGGRAVATED ASSAULT WITH A DEADLY WEAPON IS NOT AN ENUMERATED CRIME OF VIOLENCE UNDER THE COMMENTS TO THIS SECTION, BECAUSE NEW MEXICO'S AGGRAVATED ASSAULT WITH A DEADLY WEAPON IS BROADER THAN THE GENERIC DEFINITION OF AGGRAVATED ASSAULT.**

Although aggravated assault is an enumerated crime under the comments to U.S.S.G. § 4B1.2, see U.S.S.G. § 4B1.2 cmt. 1 ("'Crime of Violence' includes . . . aggravated assault . . . ."), an offense is not automatically a crime of violence simply because it has the same name as an enumerated offense, see Taylor v. United States, 495 U.S. 575, 588-89 (1990). Instead, the offense must correspond with the generic definition of that crime, which courts determine by examining whether the offense roughly corresponds to how most states use the term in their criminal codes, and by consulting prominent secondary sources, such as the Model Penal Code or criminal law treatises.  See United States v. Gastelum-Laurean, 370 F. App'x 938, 941 (10th Cir. 2010)(unpublished); Taylor v. United States, 495 U.S. at 598 & n.8.  This analysis is not always an easy task, as the Sixth Circuit observed:

> Defining aggravated assault generically is particularly difficult because many states define assault in terms of degrees rather than with the terms simple or aggravated, see, e.g., Ala. Code § 13A-6-20(a), and because some states still retain the common law distinction between assault and battery.  See, e.g., W. Va. Code § 61-2-9.

United States v. McFalls, 592 F.3d at 716-17 (6th Cir. 2010).  The Sixth Circuit noted that the Model Penal Code's definition of aggravated assault "approximates the definition of 'aggravated assault' used by several states that have consolidated the crimes of assault and battery."  United States v. McFalls, 592 F.3d at 717.  Under the Model Penal Code:

A person is guilty of aggravated assault if he:

(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or

(b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

Model Penal Code § 211.1(2).

The Tenth Circuit addressed the generic definition of aggravated assault in United States v. Gastelum-Laurean.  The Tenth Circuit had to determine whether an Arizona aggravated assault statute met the generic definition of aggravated assault, where the aggravated assault statute said "[a] person commits aggravated assault if such person commits assault as defined in § 13-1203 . . . while the victim is bound or otherwise physically restrained or while the victim's capacity to resist is substantially impaired."  370 F. App'x at 939 (citing Ariz. Rev. Stat. § 13-1204(A)(8)).  In turn, section 13-1203 said: "A person commits assault by: 1. Intentionally, knowingly, or recklessly causing any physical injury to another person; 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or 3. Knowingly touching another person with the intent to injure, insult, or provoke such person."  United States v. Gastelum-Laurean, 370 F. App'x at 939 (citing Ariz. Rev. Stat. § 13-1203).  The Tenth Circuit agreed with the parties that, after consulting "the appropriate sources," including the Model Penal Code, Substantive Criminal Law by Wayne R. LaFave, and other United States Courts of Appeals opinions, the "generally accepted crime of 'aggravated assault' is an offense that has an element either the causing of serious bodily injury or the use of a dangerous weapon."  United States v. Gastelum-Laurean, 370 F. App'x at 941.  The Tenth Circuit ultimately concluded that the Arizona aggravated assault statute did not fit the generic definition of aggravated assault,

because a person could commit an aggravated assault without causing serious bodily injury or using a dangerous weapon.  See 370 F. App'x at 942.

In defining generic aggravated assault, the Tenth Circuit stated that aggravated assault must have as an element "either the causing of serious bodily injury or the use of a dangerous weapon," 370 F. App'x at 941, but it did not elaborate on the other elements necessary in the generic definition of aggravated assault.  It cited the Model Penal Code, which defines aggravated assault in terms that are similar to the attempted-battery theory of aggravated assault in New Mexico, but does not define aggravated assault with any provisions similar to the apprehension-causing theory of aggravated assault.  See Model Penal Code 211.1(2).  The Model Penal Code defines "simple assault" with a provision closer to the apprehension-causing theory, stating that a person "is guilty of assault if he . . . attempts by physical menace to put another in fear of imminent serious bodily injury."  Model Penal Code § 211.1(1).  As the Sixth Circuit noted, "in jurisdictions like New Mexico that retain a distinct crime of assault in which the fear of injury is sufficient for provocation, 'there must be an actual intention to cause apprehension.'" United States v. Rede-Mendez, 680 F.3d at 557 (quoting 2 Wayne R. LaFave, Substantive Criminal Law § 16.3(b), at 569 (2d ed. 2003)).

The Sixth Circuit is the only court that has analyzed whether New Mexico's aggravated assault with a deadly weapon fits the generic version of the crime:

> The New Mexico version of aggravated assault differs from the generic version most significantly in the mens rea it attaches to the element of bodily injury or fear of injury.  Unlike the Model Penal Code or LaFave definitions, the New Mexico statute does not require specific intent to injure or to frighten the victim. Instead, aggravated assault in New Mexico requires general criminal intent, which consists of conscious wrongdoing or the purposeful doing of an act that the law declares to be a crime.

United States v. Rede-Mendez, 680 F.3d at 557 (internal citations and quotation marks omitted).

The Sixth Circuit also determined that New Mexico's aggravated assault with a deadly weapon is broader than the generic version, "[b]ecause the underlying assault can be committed solely by using insulting language."  United States v. Rede-Mendez, 680 F.3d at 557.  Although the Sixth Circuit relied partly on the insulting-language theory of aggravated assault, which the Court has concluded is not a viable theory in New Mexico, the Court agrees with the Sixth Circuit's analysis of the mens rea requirement: the New Mexico statute does not require specific intent to injure or frighten the victim.  New Mexico requires only general criminal intent, which can be general criminal intent to do an unlawful act and not necessarily general intent to "cause[] another person to reasonably believe that he is in danger of receiving an immediate battery." N.M. Stat. Ann. § 30-3-1(B).  The Court agrees with the Sixth Circuit's conclusion that New Mexico's aggravated assault statute is broader than the generic definition of aggravated assault and, thus, not a crime of violence under the enumerated-crime prong of U.S.S.G. § 4B1.2.

## III.   NEW MEXICO'S AGGRAVATED ASSAULT WITH A DEADLY WEAPON IS A CRIME OF VIOLENCE UNDER U.S.S.G. § 4B1.2'S RESIDUAL PRONG, BECAUSE IT PRESENTS A SERIOUS POTENTIAL RISK OF PHYSICAL INJURY AND IS ROUGHLY SIMILAR IN KIND AND DEGREE OF RISK TO THE ENUMERATED CRIMES.

Finally, if a crime does not have as an element the use, attempted use, or threatened use of physical force, and is not one of the enumerated offenses, it may still be a violent felony if it "presents a serious potential risk of physical injury to another," and therefore qualifies under U.S.S.G. § 4B1.2(a)(2)'s "otherwise," or residual clause.  U.S.S.G. § 4B1.2(a)(2).  The clause states that a crime of violence "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2).  The Supreme Court of the United States in James v. United States explained how courts should approach the "residual" prong in the ACCA, which is nearly

identical to the residual prong under U.S.S.G. § 4B1.2; the Supreme Court described the clause's preceding crimes -- "burglary, arson, or extortion, involves use of explosives" -- as offenses that, "while not technically crimes against the person, nevertheless create significant risks of bodily injury or confrontation that might result in bodily injury." 550 U.S. at 199. "Congress' inclusion of a broad residual provision . . . indicates that it did not intend the preceding enumerated offenses to be an exhaustive list of the types of crimes that might present a serious risk of injury to others . . . ." 550 U.S. at 200. The Supreme Court applied a categorical approach, looking only to "whether the <u>elements of the offense</u> are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." 550 U.S. at 202 (emphasis in original). The Supreme Court analyzed whether attempted burglary under a Florida statute is sufficiently similar to the enumerated crime of burglary to justify its inclusion in the residual prong, ultimately concluding that it is: "attempted burglary presents a risk that is comparable to the risk posed by the completed offense . . . ." 550 U.S. at 204. The defendant argued that "it is not enough that attempted burglary generally or in most cases will create a risk of physical injury to others," but the Supreme Court rejected this argument, because the "residual provision speaks in terms of "potential risk," concluding that "Congress intended to encompass possibilities even more contingent or remote than a simple risk, much less a certainty." 550 U.S. at 207-208 (internal quotation marks omitted).

> [T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury -- for example, an attempted murder where the gun, unbeknownst to the shooter, had no bullets.

550 U.S. at 208 (internal citation omitted).

The Supreme Court of the United States further clarified in <u>United States v. Begay</u> that

"the provision's listed examples -- burglary, arson, extortion, or crimes involving the use of explosives -- illustrate the kinds of crimes that fall" within the residual provision.  553 U.S. at 142.  "Their presence indicates that the statute covers only <u>similar</u> crimes, rather than <u>every</u> crime that presents a serious risk of physical injury to another."  553 U.S. at 142 (emphasis in original)(internal quotation marks omitted).  The Supreme Court emphasized that, for a different offense to be included in the residual prong, it must be "roughly similar, in kind as well as in degree of risk posed, to the examples themselves."  553 U.S. at 143.  The Supreme Court concluded that, although New Mexico's offense of driving under the influence of alcohol presented a risk of physical injury to others, it was not similar to the listed crimes, because it was a strict liability crime that did not involve "purposeful, violent, and aggressive conduct."  553 U.S. at 144-145.

The Tenth Circuit applies a two-part inquiry under the residual prong: first, courts consider "whether the offense 'presents a serious potential risk of physical injury to another' as required by the text of § 4B1.2"; and, second, courts "must determine whether the offense is 'roughly similar, in kind as well as degree of risk posed,' to the enumerated crimes in § 4B1.2(a)(2), namely, burglary, arson, extortion, or crimes involving explosives."  <u>United States v. McConnell</u>, 605 F.3d 822, 826-27 (10th Cir. 2010).  "A crime is 'roughly similar' to the crimes listed in U.S.S.G. § 4B1.2(a)(2) if it 'typically involve[s] purposeful, violent, and aggressive conduct.'"  <u>United States v. McConnell</u>, 605 F.3d at 827.  If the crime involves intentional conduct, the Tenth Circuit has said that "it is not necessary to reach <u>Begay</u>'s purposeful inquiry" and instead asks whether the crime is similar in risk to the listed crimes.  <u>United States v. Orona</u>, 724 F.3d at 1311.  The relevant analysis is, therefore, (i) whether aggravated assault with a deadly weapon under New Mexico law involves conduct that presents

a serious potential risk of physical injury to another, and (ii) whether it is similar in risk to burglary of a dwelling, arson, extortion, or an offense involving the use of explosives.

The Tenth Circuit has explained that burglary is a "classic example" of a crime posing a serious potential risk of physical injury, because, "by its nature, burglary involves a substantial risk that the burglar will use force against a victim in completing the crime.  A burglar may also provoke injury to others if victims or third parties in anger or panic react violently to resist or prevent the burglar's criminal acts."  United States v. Maldonado, 696 F.3d 1095, 1100 (10th Cir. 2012)(internal quotation marks and citations omitted).  In analyzing a California burglary statute that varied from the generic definition of burglary as it did not require unlawful entry, the Tenth Circuit said the offense still presented a serious potential risk of violent confrontation: "[A] risk of violence arises, even absent an unlawful entry, when a victim or third-party discovers the burglar's criminal intent.  The burglar may initiate violence to carry out his crime, or a victim or third party may use force to resist or prevent it."  696 F.3d at 1103.  Similarly, the Tenth Circuit has said that a conviction for fleeing and eluding a police officer presents a serious potential risk of injury to another, because "[t]his disobedience poses the threat of a direct confrontation between the police officer and the occupants of the vehicle, which, in turn, creates a potential for serious physical injury to the officer, other occupants of the vehicle, and even bystanders."  United States v. McConnell, 605 F.3d at 828 (discussing why the controlling case concluded that evading or eluding police officers posed a serious potential risk of physical injury to another).

Similarly, aggravated assault with a deadly weapon involves conduct that presents a serious potential risk of physical injury to another, because the conduct itself presents the risk of physical injury, and it is likely to lead to a confrontation between the victim and defendant.

- 45 -

Under the elements of aggravated assault with a deadly weapon, the defendant will always have a deadly weapon -- an object that, "when used as a weapon, could cause death or great bodily harm," UJI 14-304(3) NMRA; UJI 14-305(4) NMRA -- and the victim will either reasonably believe that he is in danger of receiving an immediate battery, or the defendant will have attempted to commit a battery on the victim.  For example, a defendant may shoot a gun at a victim and just barely miss; or swing a baseball bat, causing the victim to become angry and start a fight; or point a gun at a victim to threaten the victim, risking that the gun may accidentally fire.  There may also be situations that do not present a serious potential risk of physical injury: if, for example, the victim does not realize the defendant attempted to insolently touch him or her with a baseball bat and walks away unscathed, or if the defendant does not see the victim as he commits an unlawful act, and the victim runs away rather than confronting the defendant.  As the Tenth Circuit emphasized, however, "[t]he question before us is not resolved by these extreme examples."  United States v. Maldonado, 696 F.3d at 1101.  The residual prong "'does not require metaphysical certainty,' and a criminal statute need not involve a serious risk of injury under every conceivable circumstance" to be deemed a crime of violence.  United States v. Maldonado, 696 F.3d at 1101 (discussing the ACCA's residual prong, which is nearly identical to U.S.S.G. § 4B1.2's residual prong and involves the same analysis).  "Rather, we are concerned with the potential risk that arises from conduct encompassed by the elements of the offense in the ordinary case."  United States v. Maldonado, 696 F.3d at 1101 (emphasis in original)(internal quotation marks omitted).  The Court concludes that the ordinary case of aggravated assault with a deadly weapon will involve a serious potential risk of physical injury to the victim, even if there are situations when this risk may not be present.

The Court must next analyze whether aggravated assault with a deadly weapon is roughly

similar in risk to the enumerated crimes of burglary of a dwelling, arson, extortion, or an offense that involves use of explosives.  In United States v. Duran, 696 F.3d 1089 (10th Cir. 2012), the Tenth Circuit held that a conviction under Texas law for aggravated assault was not a crime of violence under U.S.S.G. § 4B1.2's residual prong, because a person could commit the offense with nonviolent or reckless acts.  Under Texas law, a person commits aggravated assault if the assault "(1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault."  696 F.3d at 1092 (quoting Tex. Penal Code § 22.02(a)).  The statute incorporates the elements of simple assault: "(a) a person commits an offense [of simple assault] if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse."  696 F.3d at 1092-93 (alteration in original)(quoting Tex. Penal Code § 22.01(a)(1)).  The Tenth Circuit said that U.S.S.G. § 4B1.2's residual clause requires "a mens rea of intent or purpose," 696 F.3d at 1093, and concluded that, because a person could commit an aggravated assault under Texas law "with a reckless state of mind," it did not meet the "'purposeful, violent, and aggressive' conduct covered by the 'crime of violence' provisions," 696 F.3d at 1095 (quoting United States v. Begay, 553 U.S. at 145).

New Mexico's aggravated assault statute does not suffer the same problem as the Texas statute, because New Mexico's offense requires general intent, whereas Texas' offense required only recklessness.  The Tenth Circuit has said that, when the offense requires intentional conduct, a sentencing court does not need to apply the "purposeful inquiry" from Begay v. United States, but instead, the court should ask "whether the crime is similar in risk to the listed crimes" in the ACCA or U.S.S.G.  United States v. Orona, 724 F.3d at 1311.  The Court concludes that aggravated assault with a deadly weapon under New Mexico law is roughly

similar to the risk presented by burglary of a dwelling: if the homeowners are inside, they are not likely to retreat, but will likely confront the burglar, both to protect themselves and to protect their property.  This risk, however, depends on the homeowners actually being present in the home -- there may be instances in which the home is empty, and thus very little potential for the homeowners to confront the burglar.  The risk that third parties will confront the burglar also depends on the third parties seeing the burglar and getting involved in protecting someone else's home.  On the other hand, when a defendant commits an aggravated assault with a deadly weapon, another person will always be present: the crime requires that the defendant attempt to commit a battery or that the victim reasonably fears an immediate battery.  There may be situations when the victim retreats or does not confront the defendant, but the risk is similar to the risk of injury in burglary -- both the burglar and the perpetrator of an aggravated assault with a deadly weapon pose a risk that they will cause physical injury in the initial conduct, and their conduct invites confrontation by the homeowners or victims as well as third parties.  The presence of a deadly weapon and the guarantee that another person will always be present arguably make aggravated assault with a deadly weapon riskier than burglary.

Following the Tenth Circuit's practice in continuing to apply the Begay v. United States purposeful inquiry out of an abundance of caution, the Court further concludes that aggravated assault with a deadly weapon typically involves purposeful, aggressive, and violent conduct. The New Mexico offense is a general intent crime, and while the defendant does not need to intend to cause the victim to fear an immediate battery, the defendant must intend the conduct that causes the victim to reasonably fear an immediate battery: this intent satisfies the purposeful requirement.  The Court also concludes that the offense involves conduct that is both aggressive and violent: under the attempted-battery theory, attempting to insolently touch someone threatens

- 48 -

the use of physical, violent force in the future, if not immediately; under the apprehension-causing theory, a victim will not likely fear an immediate battery if the defendant's conduct is not aggressive toward the victim.  In the typical case, the victim will fear a violent battery, especially because, as the New Mexico Uniform Jury Instructions indicate, aggravated assault with a deadly weapon requires that the defendant use a deadly weapon -- an object that, "when used as a weapon, could cause death or great bodily harm."  UJI 14-304(3) NMRA; UJI 14-305(4) NMRA.  If a victim reasonably believes he or she is in danger of receiving an immediate battery, and the defendant is using a deadly weapon, the victim is, in the typical case, fearful of violent and aggressive conduct.  Aggravated assault with a deadly weapon will typically involve conduct that is aggressive and violent.

The Tenth Circuit held in United States v. Silva that New Mexico's aggravated assault with a deadly weapon is categorically a crime of violence under the ACCA's element prong, under language identical to U.S.S.G. § 4B1.2.  The Tenth Circuit's analysis and holding require the Court to conclude that New Mexico's aggravated assault with a deadly weapon is categorically a crime of violence under U.S.S.G. § 4B1.2's element prong; although the Court differs under which prong it would make that determination, it agrees, as it must, with the Tenth Circuit's result, because the Court would conclude that the New Mexico offense is categorically a crime of violence under U.S.S.G. § 4B1.2's residual prong.  Under U.S.S.G. § 4B1.2's element prong, the Court would conclude that the attempted-battery theory of aggravated assault with a deadly weapon is a crime of violence, that the apprehension-causing theory of aggravated assault with a deadly weapon is not a crime of violence, and that the insulting-language theory of aggravated assault with a deadly weapon is not viable in New Mexico.  Under U.S.S.G. § 4B1.2's enumerated-crime prong, the Court would conclude that New Mexico's aggravated

assault with a deadly weapon is broader than the generic definition of "aggravated assault." While the Court's disagreement with the Tenth Circuit's analysis would not lead to a different result in this case, it notes that, had the Court been faced with making this determination under U.S.S.G. § 2L1.2, it might have concluded that New Mexico's aggravated assault with a deadly weapon is not a crime of violence, because U.S.S.G. § 2L1.2 does not include a residual prong like U.S.S.G. § 4B1.2 or the ACCA.  The Court will overrule L. Miera's objection regarding his New Mexico conviction of aggravated assault with a deadly weapon.  This conviction is categorically a crime of violence under U.S.S.G. § 4B1.2's element prong, because binding Tenth Circuit requires that result, and, thus, L. Miera qualifies as a career offender and is subject to the enhanced sentencing of U.S.S.G. § 4B1.1.

IT IS ORDERED that the Defendant's Objection to the Presentence Report regarding the characterization of his previous New Mexico conviction of aggravated assault with a deadly weapon as a crime of violence under U.S.S.G. § 4B1.2 is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Joel R. Meyers
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

*Attorney for the Defendant*